***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman. The appealing party has shown good grounds to reconsider the evidence; therefore, the Full Commission REVERSES the decision of the Deputy Commission and enters the following Opinion and Award.
 ***********
The undersigned finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Plaintiff's alleged dates of injury are October 23 and 26, 2000.
2. On those dates, the parties were subject to, and bound by, the provisions of the North Carolina Workers' Compensation Act.
3. On those dates, an employer-employee relationship existed between the parties.
4. Reliance Insurance Company was the compensation carrier on the risk. As Reliance Insurance Company is now insolvent, North Carolina Insurance Guaranty Association is the present compensation carrier on the risk.
5. Plaintiff's average weekly wage is $238.67, yielding a hypothetical compensation rate of $159.12.
6. In addition, the parties stipulated into evidence the following:
1. Packet of Industrial Commission forms.
2. Packet of medical records and reports.
7. The Pre-Trial Agreement dated April 1, 2002 which was submitted by the parties is incorporated by reference.
8. The depositions of Dr. Michael M. Haglund, Dr. Mohammad Delbahar Hossain, Dr. Charles Joseph Matthews, and Dr. M. Hisham Mohamed are a part of the evidentiary record in this case.
 ***********
Based upon the evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the deputy commissioner hearing of this case, plaintiff was forty-three years old. Plaintiff is a high school graduate from schools in Egypt and has taken business courses there. Plaintiff has lived in the United States since 1984.
2. In November 1999, plaintiff began working for the Raleigh Lions Clinic for the Blind, a vocational rehabilitation facility which served the blind and visually impaired by providing vocational evaluations, job placement services, and actual employment. The facility also employed sighted people such as plaintiff to perform tasks which required good vision. Plaintiff worked as a sewing machine operator with job duties involving sewing bags for use by the military. Plaintiff was paid based in part on her production but also received a guaranteed rate.
3. On Monday, October 23, 2000, plaintiff slipped and fell in the lunchroom during her lunch break. Plaintiff immediately got up and when coworkers asked her if she were hurt, she assured them that she was fine. There was no indication to observers that plaintiff had hurt herself, but she did appear somewhat embarrassed.
4. On Thursday, October 26, 2000, plaintiff again slipped and fell while pulling a cart of material. Plaintiff's supervisor, Ann Smith, did not see plaintiff fall but did see her getting up off the floor and went over to check on her. Plaintiff advised Ms. Smith that she was okay. Even though plaintiff did not appear to be hurt, Ms. Smith asked her several times to see the nurse, but plaintiff refused, insisting that she was not hurt so that there was no need to see the nurse. Consequently, Ms. Smith completed a note to that effect and plaintiff returned to work.
5. Plaintiff called in sick on Friday, October 27, 2000 but returned to work the following week.
6. On October 27, 2000, plaintiff visited Dr. Mohamed, an internist whom she had never seen before. Plaintiff was not accompanied at this visit by her daughter, Laura, who usually assists her in communicating with physicians. Plaintiff advised him that she had been experiencing bilateral shoulder, arm, and hand pain with numbness in her extremities which had started on the right side a few months previously, then extended to the left side before becoming constant, but worse at night. Dr. Mohamed immediately diagnosed cervical sprain, tendonitis, and referred pain or radiculopathy.
7. Plaintiff testified that she reported her falls at work to Dr. Mohamed during this visit; however, Dr. Mohamed's notes do not reflect this detail. Plaintiff testified that at this visit Dr. Mohamed was "not good at listening" and "he did not understand me." Dr. Mohamed admitted that it is possible for mistakes to occur in his recording of patients' medical histories because he relies on his memory to fill in the form at the end of the day when the patient is not present for him to clarify details.
8. During the remainder of October and November, plaintiff continued to try to work while attending medical appointments and taking prescription medications. Plaintiff suffered dizziness in her employment from medications which had been prescribed to help her sleeplessness at night due to her pain. Plaintiff took off the weeks of November 6 and 13, 2000 and then returned to work on November 20, 2000 and continued working until November 30, 2000. During this time period, plaintiff's job production decreased.
9. When plaintiff returned to Dr. Mohamed for the last time on December 1, 2000, she complained of back pain, dizziness, and lack of appetite in addition to neck and shoulder pain. Dr. Mohamed ordered an MRI on that date which subsequently revealed degenerative disc disease in her cervical spine between C3-4, C4-5, and C5-6; therefore, he referred her to a neurologist. Dr. Mohamed also wrote plaintiff out of work until December 18, 2000.
10. Dr. Mohamed stated that it was possible to fall and rupture a disc without visible, external evidence and that the soft tissue or disc injury may not appear on x-ray. Dr. Mohamed opined that if plaintiff fell, it could have aggravated a preexisting injury causing her present back condition.
11. Plaintiff visited internist Dr. Hossain, on December 14, 2000 and reported experiencing back and neck pain since she had fallen twice at work in October. Dr. Hossain diagnosed plaintiff with neck pain with cervical stenosis, bulging discs, and lower back pain, prescribed medication, removed plaintiff from work, and referred her to a neurologist. Dr. Hossain opined that plaintiff's back pain was caused or aggravated by her job falls.
12. Plaintiff visited neurologist Dr. Matthews on January 2, 2001. During his examination of plaintiff, Dr. Matthews found that plaintiff had objective findings of C5-6 disc protrusion and loss of normal curvature of the spine which were consistent with plaintiff's subjective complaints of neck spasm and pain. Dr. Matthews stated that it was more likely than not that plaintiff's back injuries were related to falls in her job.
13. On May 7, 2001, plaintiff visited neurosurgeon Dr. Haglund and related her history of two falls at work and symptoms of increased neck pain, pain radiating out of her left arm into her first two fingers, and left back and leg pain. Dr. Haglund reviewed plaintiff's MRI and diagnosed degenerative disc disease quite severe at C5-6 with spinal cord compression and disc changes at L3-4 and L4-5. Nerve root injection failed to provide plaintiff with pain relief; consequently, Dr. Haglund performed a two level anterior cervical diskectomy decompressing and fusing the C4-5 and C5-6 interspaces on September 18, 2001. Dr. Haglund opined that plaintiff's job falls caused or aggravated a preexisting condition that led to her neck deterioration and subsequent surgery. Dr. Haglund said, "but for these falls in October 2000, plaintiff would not have required treatment and neck surgery when she did."
14. Dr. Haglund declared plaintiff at maximum medical improvement on January 18, 2002 and gave her a five percent permanent partial disability rating for her spine. Dr. Haglund said that a Functional Capacity Examination was warranted to determine plaintiff's physical capacity for work and work restrictions.
15. The Full Commission has reviewed all of the expert medical evidence and finds that no physician testified to a reasonable degree of medical certainty that plaintiff's back injuries were likely caused solely by something other than plaintiff's falls at work.
16. Prior to October 2000, plaintiff had no significant problems with her back or neck. Plaintiff incurred minor injuries in a 1995 automobile accident in New Jersey that had completely resolved prior to her falls at work in October 2000.
17. Ms. Ann Smith, plaintiff's supervisor, eyewitnessed plaintiff getting up from her fall at work on October 26, 2000 and acknowledged that plaintiff's October 23, 2000 fall had been reported to her thereby corroborating plaintiff's accounts of the incidents. A note from Ms. Smith documenting plaintiff's October 26, 2000 fall was received into evidence.
18. Mr. James Wells, president and CEO of defendant-employer, stated that is was company policy that a supervisor is required to escort an employee to the plant nurse following an accident and confirmed that plaintiff's supervisor, Ms. Smith, failed to do so following plaintiff's fall on October 26, 2000. Mr. Wells had no knowledge of any medical condition that would keep plaintiff from performing her normal job duties prior to her falls.
19. Ms. Shirley Davis, rehabilitation program nurse of defendant-employer, had no record of plaintiff needing nursing care in the entire year prior to her falls at work. Ms. Davis had no reports from plaintiff of any neck or back pain prior to October 2000.
20. Based upon the totality of the medical and lay evidence, plaintiff has proven by the greater weight of the evidence that she incurred injuries by accident on October 23 and 26, 2000 that caused or aggravated a preexisting condition of her neck and back that have rendered her disabled from working since December 1, 2000.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On October 23 and 26, 2000, plaintiff's falls at work constituted injuries by accident arising out of and in the course of her employment with defendant-employer. N.C.G.S. § 97-2(6).
2. Plaintiff has been unable to earn wages in the same or any other employment and has been totally disabled as a result of her October 23 and 26, 2000 injuries by accident that caused or aggravated her spine and back conditions; therefore, plaintiff is entitled to receive temporary total disability compensation beginning December 1, 2000. N.C.G.S. §97-29.
3. Plaintiff is entitled to receive all medical treatment relating to her compensable injuries by accident on October 23 and 26, 2000 so long as such treatment is necessary to effect a cure, give relief, or lessen plaintiff's period of disability. N.C.G.S. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff ongoing total disability compensation at the rate of $159.12 per week from December 1, 2000 and continuing until further Order of the Commission. Said amount shall be paid in a lump sum subject to an attorney's fee for plaintiff's counsel approved in Paragraph 3.
2. Defendants shall pay all past and future medical expenses resulting from plaintiff's injuries by accident so long as such treatment is necessary to effect a cure, give relief, or lessen plaintiff's period of disability.
3. A reasonable attorney's fee of twenty-five (25%) percent of compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five (25%) percent of lump sum due plaintiff under Paragraph 1 of this AWARD shall be deducted from that sum and paid directly to plaintiff's counsel. In regards to future compensation, plaintiff's counsel shall receive the equivalent of every fourth check.
4. Defendants shall pay the costs due the Commission.
This the ___ day of June 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER